**Greenspun v. U.S.A. Entertainment Center**

C.P. of Montgomery County, no. 94-20047.

*Debra A. Jensen* and *Michael W. McGurrin,* for plaintiff.

*Margaret Sherry Lurio* and *Douglas M. Lurio,* for defendant.

SALUS, *J.,* November 17, 1998—This appeal stems from a set of orders issued by this court with respect to an age discrimination claim brought by Norman H. Greenspun, appellant, against U.S.A. Entertainment Center Inc., defendant, for alleged wrongful termination of employment.[1] Appellant raises two issues in his 1925(b) concise statement of matters complained of on the appeal. First, he argues that this court erred as a matter of law when, by order dated May 22, 1996, it granted defendant's preliminary objections to appellant's complaint in striking appellant's demand for a jury trial, his request for punitive damages, and his claim against defendant George H. Jensen Jr. in his individual capacity brought by appellant pursuant to the Pennsylvania Human Relations Act, 43 P.S. §951 et seq.[2] Second, appellant argues that this court erred

---

1. In particular, appellant questions the propriety of three orders issued by this court in this case. Two orders, dated May 22, 1996 and April 28, 1998, were issued by the Honorable William T. Nicholas, in which this court granted in part and overruled in part the defendant's preliminary objections to appellant's complaint. The Honorable Samuel W. Salus II, of this court issued a final order in favor of the defendant disposing of this case on August 28, 1998.

2. Judge Nicholas of this court once again denied appellant's claim against Mr. Jensen in his individual capacity. By order dated April

as a matter of law when, by order dated August 27, 1998, it entered a verdict in favor of the defendant because it found that appellant failed to prove that age discrimination was the basis for his employment termination. These points of appeal will be addressed below.

## FACTUAL AND PROCEDURAL HISTORY

This action centers on appellant's allegations that defendant perpetuated a yearlong pattern of age-based employment discrimination against him. As required under the Act, appellant proceeded first to the Pennsylvania Human Resource Commission to settle his claim. The commission dismissed appellant's claim because it determined that the claim lacked merit. Consequently, appellant next sought resolution of his claim in the Montgomery County Court of Common Pleas.

Appellant filed a complaint with this court on October 17, 1994, alleging that the defendant willfully violated the Act by replacing appellant with Edward Sullivan, a worker 30 years his junior. Defendant filed preliminary objections to appellant's complaint on March 15, 1995, arguing, inter alia, that appellant failed to state a cause of action against defendant.

By order dated May 22, 1996, the Honorable William J. Nicholas of this court overruled in part and sustained in part the defendant's preliminary objections to appellant's complaint. In particular, this court ordered that

28, 1998, Judge Nicholas denied appellant's motion for reconsideration of this court's May 22, 1996 order, notwithstanding the emergence of new case law after the May 22, 1996 order, which suggested that Mr. Jensen may be personally liable to appellant under the Act.

the following claims be stricken from the case: (1) appellant's demand for a jury trial; (2) his request for punitive damages; and (3) his claims for intentional infliction of emotional distress and for personal liability against defendant, Mr. Jensen. Defendant then filed an answer to plaintiff's complaint on June 11, 1996.

On March 24, 1998, appellant filed a motion for reconsideration of this court's May 22, 1996 order to encourage this court to revive Mr. Jensen as a defendant in this matter, in light of case law which developed, since that order which suggested that individual employees may be personally liable under section 955(e) of the Act. By order dated April 28, 1998, Judge Nicholas denied appellant's motion because the developing case law cited by appellant was factually distinguishable from the instant case. More precisely, this court held that Mr. Jensen could not be subject to personal liability under the Act because he failed to take affirmative steps to aid and abet the employer in the employment termination of appellant.

The Honorable Samuel W. Salus II of this court presided over the trial of this matter on July 13 and 14, 1998. By order dated August 27, 1998, this court entered a verdict in favor of defendant because appellant failed to show that his termination of employment was the result of age discrimination.

## DISCUSSION

Appellant raises three points of appeal in its concise statement which question the propriety of this court's May 22, 1996 order. Appellant argues that this court erred as a matter of law when it sustained defendant's preliminary objections to appellant's demand for a jury

trial, to his request for punitive damages, and to his claim against Mr. Jensen in his individual capacity.[3]

This court correctly sustained the defendant's preliminary objections to appellant's demand for a jury trial because such a right is not afforded to appellant under the Act. In *Murphy v. Cartex Corp.*, 377 Pa. Super. 181, 546 A.2d 1217 (1988), the Superior Court of Pennsylvania held that an employee did not have a right to a jury trial under the Act. According to *Murphy,* jury trials are not available in proceedings created by statute unless either the proceeding has a common-law basis or the statute expressly or impliedly provides for this right. *Id.* at 192, 546 A.2d at 1222. (citations omitted) First, the *Murphy* court concluded that the Pennsylvania Constitution did not preserve a right to a jury trial under the Act because the PHRA and "the rights it confers were nonexistent at the time the Pennsylvania Constitution was adopted." *Id.* at 192-93, 546 A.2d at 1223. Second, the court concluded that no such right is expressly provided by the Act because neither section 962(c) "nor any other provision of the PHRA states whether the proceedings authorized in the courts of common pleas may be tried before a jury." *Id.* at 192, 546 A.2d at 1222.

The court also concluded that the Act does not implicitly provide for this right. The commission is vested with exclusive initial jurisdiction to resolve claims brought under the Act, and courts of common pleas may hear a claim only when the commission either fails to act upon a claim within a one-year period or

---

3. Appellant also questions the propriety of this court's April 28, 1998 order, which denied the appellant's motion for reconsideration of the May 22, 1996 order and again sustained the defendant's preliminary objections to appellant's personal liability claim against Mr. Jensen.

decides to dismiss a claim. The commission is also granted broad discretion in fashioning an award and is entitled to deference by a reviewing court. As such, the commission is primarily responsible for resolving claims based upon alleged violations of the Act. However, there is no right to request a jury trial in cases brought before the commission. *Id.* at 192-93, 546 A.2d at 1222-23. Thus, there is also no right in proceedings brought before courts of common pleas because there is nothing in either the express language of the Act or in its legislative history which suggests that the legislature intended to provide for a materially different proceeding when claims are decided by this court rather than by the commission.[4] For these reasons, the court in *Murphy* held that the employee did not have a right to a trial by jury under the Act.[5]

This court also correctly sustained the defendant's preliminary objections to appellant's request for punitive damages because punitive damages are not recoverable under the Act. In *Hoy v. Angelone,* 456 Pa. Super. 596, 691 A.2d 476 (1997), *aff'd,* 554 Pa. 134, 720 A.2d 745 (1998), the Superior Court of Pennsylvania held

---

4. The court also stressed two other reasons as support for its holding. First, it stressed that the equitable relief provided under the Act strongly suggested against the right to a jury trial because courts are uniquely qualified to fairly grant equitable relief. *Murphy,* 377 Pa. Super. at 194-95, 546 A.2d at 1223-24. Second, the absence of a right to a jury trial in title VII of the Civil Rights Act of 1964 lent support to the notion that no such right is provided under the Act because the Pennsylvania legislature modeled the Act after this federal legislation. *Id.* at 195, 546 A.2d at 1224.

5. *Id;* see also, *Walker v. Grand Central Sanitation Inc.,* 430 Pa. Super. 236, 239 n.1, 634 A.2d 237, 238 n.1 (1993) (holding that the trial court correctly disallowed the jury to consider his PHRA claim because the Act did not provide Walker with the right to a jury trial).

that punitive damages are not recoverable under the Act. The *Angelone* court stressed that the availability of punitive damages under the Act was an issue of first impression in Pennsylvania. *Id.* at 611-12, 691 A.2d at 483. The court noted, however, that there was a recent trend among federal courts to allow the recovery of punitive damages under the Act, based on their interpretation of a Pennsylvania Supreme Court decision in *Pennsylvania Human Relations Commission v. Zamantakis,* 478 Pa. 454, 387 A.2d 70 (1978), in which the state's highest court held that the Act permits employees to recover damages for humiliation and mental anguish. The *Angelone* court, however, stressed that "damages for humiliation and mental anguish are compensatory in nature, and are thus different in purpose and kind from punitive damages, the express purpose of which is to punish." *Angelone,* 456 Pa. Super. at 612, 691 A.2d at 483. The court further stated that:

"We are unpersuaded that such damages are recoverable under the PHRA and are reluctant to allow such recovery in the absence of more definitive guidance by our high court. Whether the PHRA contemplates recovery for punitive damages is a matter which is properly determined by our Supreme Court." *Id.*

In light of Pennsylvania precedent, this court properly found that appellant was not entitled to punitive damages under the Act.

This court properly sustained the defendant's preliminary objections to appellant's claim against George Jensen for individual liability under section 955(e) of the Act because Mr. Jensen was not the employer of the appellant and the action he took did not perpetuate an unlawful discriminatory practice. Section 955(e) holds liable any persons, employers, or employees who perpetuate discriminatory practices against employees

in the workplace. Mr. Jensen is not personally liable to appellant because Mr. Jensen is not the employer. Notwithstanding his position as president, CEO, and chairman of the board of directors of the corporate defendant, Mr. Jensen is not the appellant's employer. Rather, he is only an officer of the defendant who made his decision to terminate the appellant's employment at the behest of the company. Further, Mr. Jensen is not individually liable as a person or employee of the defendant because he failed to "aid, abet, incite, compel or coerce the doing of any act declared by this section [of the Act] to be an unlawful discriminatory practice . . . ." Section 955(e). Appellant does not make any allegations that Mr. Jensen perpetuated an ongoing pattern of discrimination against him. In fact, appellant admits that he was not aware of any age-based discriminatory comments directed against him while employed by the defendant.[6] Thus, Mr. Jensen is not personally liable to appellant because his action does not place him within section 955(e) of the Act.

Appellant's final point of appeal contends that this court erred as a matter of law when, by order dated August 27, 1998, it ordered a verdict in favor of defendant because it found that appellant failed to prove either a direct or pretextural case of age discrimination. For reasons set forth below, this court properly ruled in favor of defendant because age discrimination was not the basis for appellant's employment termination.

In the absence of a showing that defendant terminated appellant for discriminatory reasons, defendant was free to release appellant from its employ because appellant maintained only an at-will employment relationship with

---

6. See deposition of Norman H. Greenspun, dated December 21, 1995, p. 20.

the corporation. Pennsylvania is an at-will employment state. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974). There was an employment at-will relationship here because no contract existed between appellant and the defendant.[7] Thus, in the absence of the applicability of the discrimination or public policy tort exceptions to the at-will doctrine, defendant may at any time and for any reason dismiss the appellant. See *Jacques v. Akzo International Salt Inc.,* 422 Pa. Super. 419, 619 A.2d 748 (1993). Appellant's position with the company only came about because appellant was in need of work and was familiar with Mr. Jensen from working periodically with him over the last 25 years. The defendant, however, hired appellant on a part-time basis solely for the purpose of assisting the corporation with bookkeeping in its early stages of operation. Defendant made no promise to appellant of long-term employment and provided no assurances to appellant that he could work for the corporation in the future.[8] That defendant did not compensate appellant for his assistance until the corporation received funding and that appellant was not entitled to employment benefits further underscore the temporary nature of appellant's employment. Thus, the nature and scope of appellant's employment relationship with the defendant allowed the corporation to terminate appellant once his temporary function to the defendant was fulfilled.

Appellant's inability to grasp the employment skills required of him in light of the defendant's corporate growth provided the basis for appellant's employment termination, not his age. Mr. Jensen began overseeing the company in 1992. As a new company, the defendant employed appellant to assist the corporation in its start-

---

7. Findings of fact, no. 5, of August 27, 1998 order.
8. Findings of fact, no. 9.

up operation. Appellant was considered a treasurer of the corporation. Due to the company's infancy at this time, however, appellant's position entailed nothing more than acting as a bookkeeper for the defendant.[9] Shortly after the beginning of appellant's employment, however, the company continued to grow and its financial needs expanded. For example, over 900 more shareholders now invested in the corporation since the beginning of appellant's employment. Consequently, the defendant placed greater reliance on computerization in tracking stockholder information. Further, this progress also positioned the defendant to become a public company. As a result, appellant's limited capacity as a bookkeeper did not coalesce with the company's future and trends. Appellant's manual style of accounting precluded him from performing work in the timely, efficient manner provided by computerization. For example, the bookkeeping functions that appellant performed by hand in days could be performed by a computer in less than half a day.[10] Appellant even admitted that computerization eradicated his manual style of accounting such that he was limited to writing checks for the company. Appellant also lacked the skills necessary to complete a public filing.[11] Notwithstanding the importance of these filings to the corporation, appellant was not qualified to prepare the paperwork necessary to make the defendant a public company. For these reasons, defendant properly terminated appellant because his limited employment skills contravened the future growth and success of the corporation.[12]

---

9. Findings of fact, no. 11.

10. Findings of fact, no. 38.

11. Findings of fact, no. 30.

12. This court stresses that appellant's refusal to try and adapt to the new role required of him in light of the corporation's growth

That the skills lacking in appellant were critical to the continued survival of the corporate defendant further explains why age discrimination was not the reason for his employment termination. By the summer of 1993, the defendant changed the focus of the company because of equipment inadequacy.[13] This corporate change created a net loss to the company such that it needed the managerial expertise of Mr. Sterling and Mr. Sullivan, employees more qualified than appellant, to survive. Further, the funds of the company for compensating employees were so stretched as a result of this new business focus that retaining appellant on the payroll for work that he could not do was not a viable option for the defendant. Appellant's limited accounting skills were not necessary to the corporation. While appellant may have fulfilled his old role in assisting the company in its start-up operation, he failed to assume the new financial role required of him by the corporation's expansion and focus. Appellant's termination was necessary to preserve the smooth operation of the company because appellant's limited employment skills rendered him a liability to the corporation.

The circumstances of appellant's recent employment history also demonstrate that legitimate business concerns rather than age discrimination provided the basis for his job termination. Before he was employed by the defendant, appellant worked for American Film Technologies. Though he initially served as the company's chief financial officer, appellant was relegated to the position of the assistant C.F.O. when a new C.F.O.

---

did not help his case. This court found that appellant did not respond to Keith Sterling's (employed as vice president of operations) and Mr. Sullivan's attempts to assimilate appellant into the new financial role. Findings of fact, no. 37.

13. Findings of fact, no. 39.

was hired by A.F.T. to handle more complex business matters brought about by A.F.T.'s expansion. Notwithstanding its parallel to the present case, this set of facts did not engender an age discrimination suit against A.F.T. Here, the defendant also hired a more qualified financial expert to handle more complex business matters precipitated by corporate growth. Specifically, defendant hired Mr. Sullivan to assume the responsibilities of C.F.O. of a company set to become public and to achieve computerization. Mr. Sullivan's duties included preparing a business plan, preparing budgets, assisting new product development, conducting investor relations, and using computer-driven accounting.[14] Appellant could not perform any of these duties. As a result, appellant cannot maintain that his termination was the result of age discrimination.

Finally, appellant's failure to put forward persuasive evidence in support of his claim convinces this court that his employment termination was proper and unactionable. Appellant's only source of evidence suggesting age discrimination is the videotaped deposition of Robert Bartlett. Mr. Bartlett is the only person who claims that he heard defendant utter discriminatory comments concerning appellant's age. This court properly found this evidence not credible. At the time of his deposition, Mr. Bartlett was a disgruntled former employee of the company. Thus, the ill will displayed by Mr. Bartlett towards Mr. Jensen and other present employees of the defendant rendered his testimony "skewered and unworthy of belief."[15] Moreover, this court finds most telling that no other employees reported

---

14. Findings of fact, no. 55.
15. Findings of fact, no. 45.

any discriminatory comments to either the defendant or this court.[16] Unlike Mr. Bartlett, Mr. Sullivan and Mr. Sterling had no reasons to provide inaccurate testimony because they were not employed by defendant at the time of trial. Therefore, this court properly entered a verdict in favor of the defendant because appellant's age discrimination claim was not borne out by the evidence.

## CONCLUSION

For the foregoing reasons, the Superior Court should affirm this court's orders of May 22, 1996, April 28, 1998, and August 27, 1998.

---

16. Findings of fact, no. 49.